**In re AERCO METALS, INC., Debtor.**

**Bankruptcy No. 485–40390.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Dec. 5, 1985.

**78**

Tim Truman, Fort Worth, Tex., for trustee.

Robert F. Vargo, Holbrook, Kaufman & Becker, San Antonio, Tex., for Northside Bank of San Antonio.

Timothy J. Snodgrass, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., Vera R. Bangs, Liddell, Sapp, Zivley & Laboon, Dallas, Tex., for Ohio Steel Tube Co.

## MEMORANDUM OPINION AND ORDER

MICHAEL A. McCONNELL, Bankruptcy Judge.

On July 2, 1983, Northside Bank of San Antonio, extended a loan in the principal amount of $100,000.00 to the Debtor, Aerco Metals, Inc. As evidence of the loan, E.A. Rudy, the father of E.A. Rudy, III, an officer of the debtor corporation, executed a Promissory Note on behalf of Aerco. In addition Gary Scott and E.A. Rudy executed guaranty agreements in connection with the loan, making themselves liable for the full amount of the principal and interest.

On July 21, 1984, E.A. Rudy executed a Renewal of the Note on behalf of Aerco, and as collateral for the Renewal Note, the bank took a security interest in, *inter alia,* the inventory, accounts and contract rights which Aerco then owned or thereafter ac-

quired. The bank perfected its security interests by filing the UCC–1 Financing Statement with the Secretary of the State of Texas on November 9, 1984.

On May 1, 1985, less than one year after the above-described loan transaction was consummated, Aerco filed its voluntary petition under Chapter 11. On May 10, 1985, Aerco filed a Motion for Authorization to Sell Property Free and Clear of Liens, outside the ordinary course of business, to which Ohio Steel Tube Company filed an objection on May 16, 1985. On May 31, 1985 the Court conducted a hearing on the proposed sale and, over the objection of Ohio Steel Tube Company, it approved the sale of Aerco's inventory to Future Metals, Inc. for a price of $80,000.00. The Court directed, however, that the trustee hold the proceeds of the sale in escrow pending the determination of whether Northside Bank had a valid security interest in the inventory sold.

On August 20, 1985 the Court held a hearing to determine the validity of the bank's asserted security interest in the debtor's inventory. While Ohio Steel Tube Company does not contest the validity of the security interest, it now argues that in giving the security interest to the bank, the debtor effected a preferential transfer for purposes of 11 U.S.C. § 547 as to the guarantors, Gary Scott and E.A. Rudy. Ohio Steel further asserts that this alleged voidable preference is recoverable from the bank pursuant to 11 U.S.C. § 550, because the transfer occurred within the enhanced proscriptive period applicable to insiders as provided by § 547(b)(4)(B).

The question presented for determination by the court, then, is whether Aerco executed a preferential transfer when it conveyed a security interest in its inventory, accounts and contract rights to Northside Bank, a non-insider, within one year of its filing a voluntary Chapter 11 petition. If the Court determines this question in the affirmative, it must then determine whether the Debtor in possession can recover the transfer from the Bank pursuant to 11 U.S.C. § 550, effectively abrogating the

Bank's security interest in the debtor's inventory, accounts and contract rights.

## LEGAL ANALYSIS

11 U.S.C. § 547(b) provides that:

(b) Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest in the Debtor in property—

(1) To or for the benefit of a creditor;

(2) For or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) Made while the Debtor was insolvent;

(4) Made—

(A) On or within 90 days before the date of the filing of the petition; or

(B) Between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(C) Such creditor received payment of such debt to the extent provided by the provisions of this title.

█ In order to avoid a preferential transfer, the trustee must allege and prove all of the elements delineated in § 547(b), with the exception of the Debtor's insolvency during the 90 day period preceding the filing of the Debtor's petition, which Section 547(f) presumes. 2 *Collier Bankruptcy Manual*, § 547.01 at 547–5 (3rd Ed. 1985); *See also, O.P.M. Leasing Services, Inc.*, 46 B.R. 661 (Bankr.S.D.N.Y.1985).

11 U.S.C. § 101(48) defines a transfer as: ... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity or redemption...

As to the first element of § 547(b), the court finds that Aerco's transfer of a security interest in its inventory, accounts, and contract rights constituted a double transfer for purposes of § 547(b)(1), in that it benefitted not only the Bank but also E.A. Rudy and Gary Scott, the guarantors of Aerco's note to the Bank. First, the

transfer provided the Bank with additional security for the debt .evidenced by the Renewal Note. Other courts have held that the granting of a security interest in the debtor's property, or its outright conveyance, to a creditor is a transfer under § 547(b)(1). *In Re La Mancha Aire, Inc.*, 41 B.R. 647, 648 (Bankr.S.D.Fla.1984); *In Re Gurs*, 34 B.R. 755 (Bankr.App.P. 9th Cir.1983). Second, Aerco's transfer of a security interest in its property to Northside Bank benefitted the guarantors of its note to Northside Bank, Mr. E.A. Rudy and Mr. Gary Scott, in that the transfer reduced the contingent claim which they held against the estate. 4 *Collier on Bankruptcy* § 547.18 (15th Ed.1981) states:

A guarantor or surety for the debtor, or an endorser of his notes or checks, will be a creditor under the Code because he will hold a contingent claim against the debtor that becomes fixed when he pays the creditor whose claim he has guaranteed or insured. Consequently, any transfer made by a debtor to or for the benefit of an endorser, guarantor, or surety, may constitute a preference. Accordingly, any payment made by the debtor-maker to the holder of his notes may be a preference to the endorser, even though the endorser himself is insolvent and did not procure the payment... *See also, Matter of R.A. Beck Builder*, 34 B.R. 888, 892 (Bankr.N.D.Pa. 1983); House Report No. 95–595, 95th Cong. 1st Sess. (1977) 309, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6267.

As to the second element required under § 547(b), the parties have agreed in their respective briefs that the transfer of the security interest was "on account of an antecedent debt owed by the Debtor before the transfer was made" because the security interest was granted on July 24, 1984, and the Bank filed its UCC–1 filing statement with the Secretary of State's office on November 11, 1984.

Section 547(e)(2) provides:

For purposes of this Section, except as provided in Paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within ten days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such ten days;

The Court finds, therefore, that since the Bank did not perfect its security interest in the debtor's property within ten days of receiving it, the transfer was on account of an antecedent debt.

The Court further finds that Mr. E.A. Rudy is an insider of the Debtor pursuant to of Section 101(28), since Rudy is the father of a director of the corporation. Section 101(28) provides that:

(28) Insider includes...

(B) If the debtor is a corporation—

(i) Director of the corporation;

(ii) Officer of the debtor;

(iii) Person in control of the debtor;

(iv) Partnership in which the debtor is the general partner;

(v) General partner of the debtor; or

(vi) Relative of a general partner, director, officer, or person in control of the debtor;

■ As to the fourth element of § 547(b), the court finds that the one year proscriptive period delineated in § 547(b)(4)(B) applies to Aerco's transfer of a security interest in its property to Northside Bank, because one of the two derivative beneficiaries thereof was an insider of the debtor corporation. But while Ohio Steel Tube, Inc. has met its burden of establishing the first, second and fourth elements of Section 547(b), it has not adduced sufficient evidence as to the third and fifth. Specifically, Ohio Steel Tube, Inc. has not established that Aerco was insolvent at the time it transferred the security interest in its property to North-

side Bank and that such transfer enabled E.A. Rudy and Gary Scott, the guarantors of Aerco's indebtedness to the Bank, to receive more than they would have if the case were filed under Chapter 7, if the transfer had not been made, and if the guarantors had received payment of their contingent claims to the extent provided by the provisions of Chapter 11.

Several courts have held that a guarantor has been preferred when its secondary liability is reduced or extinguished by the debtor's transfer of money or property on account of an antecedent debt to a creditor whose debt was the subject of the guarantee. *See, e.g. In Re Duccilli Formal Wear, Inc.,* 24 B.R. 699, 8 B.C.D. 1180 (Bankr.S.D.Ohio 1982); *In Re Big Three Transportation, Inc.,* 41 B.R. 16 (Bankr. W.D.Ark.1983); *Cooper Petroleum Company v. Hart,* 379 F.2d 777 (5th Cir.1967). Yet the matter at bar is analogous to that presented in *Matter of R.A. Beck Builder, Inc., supra.* In that case, the officers of the debtor executed an agreement of guaranty and suretyship, wherein they personally guaranteed an antecedent debt owed by the debtors to a bank. During the period of 90 days to one year preceding the debtors' filing, the debtor made nine monthly payments on its debt to the bank, thereby decreasing the insider/guarantors' contingent liability. While the trustee successfully established that the payments constituted transfers on account of an antecedent debt which benefitted the insider/guarantor's during the proscriptive period delineated in § 547(b)(4)(B), he failed to adduce sufficient evidence on the issues of the debtor's insolvency at the time of the transfers and whether the transfers enabled the guarantors inter alia, to receive than they would have received under Chapter 7. As a result, the court reserved judgment as to whether the transfers to the bank during the one year period prior to the debtors' filing for bankruptcy constituted preferential transfers until it heard additional evidence regarding the omitted elements. *Id.* at 894.

## THE IMPACT OF SECTION 550(a)

■ Assuming arguendo that a preferential transfer did occur, the Court would be faced with the issue of whether, and if so from whom, recovery should be allowed. Citing the case of *Big Three Transportation, Inc. supra,* Ohio Steel Tube, Inc. argues that the transfer to Northside Bank during the enhanced insider preference period established under Section 547(b)(4)(B) can be recovered from the bank pursuant to Section 550(a), since the bank was the immediate transferee thereof. In response thereto, Northside Bank argues that a transfer to a creditor who is not an insider of the debtor during the enhanced preference period is not recoverable from the creditor merely because an insider of the debtor guaranteed the debtor's obligation to the creditor. 11 U.S.C. § 550 provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under Section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transfer of such initial transferee.

In its analysis of § 550, Collier states: In some circumstances a literal application of Section 550(a) would permit the trustee to recover from a party who is innocent of a wrong doing and deserves protection. *In such circumstances, the bankruptcy court should use its equitable powers to prevent an inequitable result...* likewise, if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to preferentially benefit an insider guarantor, *recovery should be restricted to the guarantor and the creditor should be protected. Otherwise, a creditor who does not demand a guarantor can be better off than one who does.* 4 *Collier*

*on Bankruptcy* ¶ 550.02 at 550–8. (15th Ed.1985). (emphasis added)

Several courts have followed this analysis. The Court in *Matter of R.A. Beck Builders, Inc., supra,* refused to allow the trustee to recover payments made to a bank within the one year prescriptive period from the bank itself. Instead, the court allowed the trustee to recover the payments from the mediate transferees, the inside guarantors. *Id.* at 894. The Court stated: "The Court is satisfied that the bank should not be penalized for its prudence in seeking a guarantor of the debt here in question." *Id.* at 894. Similarly, the court in *In Re Ducculli Formal Wear, Inc., supra,* permitted the trustee to recover payments made to a bank within 90 days to one year before the debtor filed for bankruptcy from the insider guarantor for whose benefit the payments were made. The Court stated "... where the initial transferee is not an insider, it would be inequitable to require the bank to surrender up repayment of its loan where payments to it were not made within 90 days of filing." *Id.* at 1183.

In a case almost identical with the one at bar, a debtor obtained a loan from the bank which was, in turn, guaranteed by insiders of the corporation, its vice president and secretary. *In Re Church Buildings and Interiors, Inc.,* 14 B.R. 128 (Bankr.W.D. Okla.1981). Within the period between 90 days and one year before the Debtor entered bankruptcy, the bank released the insiders from their guarantees in exchange for a security agreement from the Debtor which granted the bank a security interest in all of its tangible and intangible property, including accounts receivable and the proceeds therefrom. The Court refused to rule on the issue of whether the transfer of the security interest to the Bank constituted a preferential transfer as to the insider guarantors, because the guarantors had not been made parties to the proceeding. But the Court held that even if the transfer of the security interest was preferential as to the insider guarantors, it would deny the

trustee the opportunity to recover the security interest from the immediate transferee, the bank, under Section 550(a). *Id.,* at 131. Similarly, in *In Re Mercon Industries, Inc.,* 37 B.R. 549 (Bankr.E.D.Pa.1984) held that preferential payments made by the debtor on account of an antecedent debt more than 90 days but less than one year before the debtor entered bankruptcy could not be recovered from the creditor which had initially received them. The Court stated that "... since the insiders are ostensibly liable under § 547(b), they may be liable under § 550(a)(2) as mediate transferees, although Goldman, the immediate transferee, is not subject to liability." *Id.* at 553.

This Court is persuaded that the interpretations furnished by *Collier* and the above-cited cases offer the most equitable disposition of the matter at bar. It rules, therefore, that even if Aerco's transfer of a security interest in its property to Northside Bank constituted a preferential transfer for purposes of Section 547(b), it would restrict recovery thereof to the insider who guaranteed the note, E.A. Rudy, under Section 550(a). The Court does not wish to punish the Bank for the prudence it exercised in obtaining a guaranty. Moreover, it agrees with the statement made by the court in *In Re Cove Patio Corp.,* 19 B.R. 843 (Bankr.S.D.Fla.1982).

> Section 550(a)(1) was not intended to expand the trustee's right to recover preferences as provided in Section 547 but rather was intended only to facilitate his recovery of transfers avoidable under Section 547, regardless of whether the transfer was effected through a number of parties or effected indirectly for the benefit of a party who actually benefited from the preference.

Based upon the foregoing, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that, even if a preferential transfer did occur, no recovery can be had against Northside Bank of San Antonio, the immediate transferee.